# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

ROSETTA ALONCI,

                                              Plaintiff,

        -vs-

INTERNATIONAL UNION OF ELECTRONIC,         DECISION AND ORDER
ELECTRICAL, SALARIED, MACHINE &                05-CV-6579 CJS (F)
FURNITURE WORKERS, AFL-CIO, and its
LOCAL 509 (IUE-CWA, LOCAL 509),

                                              Defendants.

## APPEARANCES

For plaintiff:                      Donna Marianetti, Esq.
                                      1511 Providence Drive
                                      Webster, NY 14580
                                      585-265-4830

For defendants:                Matthew J. Fusco, Esq.
                                      Chamberlain, D'Amanda, Oppenheimer & Greenfield, LLP
                                      1600 Crossroads Building
                                      Two State Street
                                      Rochester, NY 14614
                                      585-232-3730

## INTRODUCTION

     **Siragusa, J.** This case involves a dispute concerning a collective bargaining agreement and is now before the Court on Defendants' motion to dismiss (Docket No. 22) the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Defendants' application is denied.

**FACTUAL BACKGROUND**

This case is joined with several others[1] in which Plaintiffs allege similar wrongful conduct on the part of Defendants. Plaintiff's counsel states in her memorandum of law that,

> In total, the undersigned plaintiffs' counsel filed thirty (30) substantially, though not identical, Complaints against the Union. The plaintiffs fall into two categories: (1) those, such as Mr. Zagari, who were actively employed by Valeo and were members of the Union at the time of [sic] the September, 2005 ratification vote took place; and (2) Those, such as plaintiff Alonci, who separated their employment within a short time prior to the September, 2005 amendment pursuant to the terms of the May, 2002 amendment to the Collective Bargaining Agreement.

(Pl.s' Mem. of Law (Docket No. 25) at 2.)

The Court will presume the following allegations from the amended complaint to be true for the purposes of this motion. Plaintiff Rosetta Alonci ("Alonci")[2] was employed by Valeo Corporation ("Valeo") as an assembly worker, commencing on or about November 28, 1988, and ending on or about June 6, 2005. During her employment with Valeo, she was a member of the International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO, and its Local 509 (IUE-CWA, Local 509) (collectively hereinafter referred to as "Union").

---

[1]Lead case: 6:05-cv-06608-CJS; member cases: 6:05-cv-6695-CJS; 6:05-cv-6728-CJS; 6:06-cv-6034-CJS; 6:06-cv-6035-CJS.

[2]Although the complaints in several cases are consolidated, the facts recited in this decision refer specifically to the lead plaintiff. The parties have represented that the allegations in the consolidated actions are similar to that plaintiff's. (Stipulation and Order Extending the Time and Consolidating (Docket No. 2) at 3; Pl.s' Mem. of Law (Docket No. 15) at 2.)

On or about July 20, 2000, the Union and the Valeo negotiated the terms of a collective bargaining agreement[3] which was ratified and deemed to go into effect on August 14, 2000. The Union told its members that the agreement was highly beneficial to them and that the agreement was to remain in effect through September 2008.

On December 14, 2001, Valeo filed for bankruptcy protection. Valeo sought concessions from the Union, which the Union described as "wage concessions on average of $3.00/hour, huge cuts in health care benefits with large out of pocket costs and severe, seniority threatening, work practice changes."[4] Subsequent to Valeo's bankruptcy filing, the Union reached what it termed a "concessionary agreement," which was ultimately ratified by its membership, based upon the Union's unanimous recommendation that the same be approved as an amendment to the July 2000 agreement.

Between January and March 2005, the Union informed Alonci and other employees that they should use voluntary attrition programs, because if enough people did not sign up, there would be involuntary terminations. (Am. Compl. ¶ 17.) A number

---

[3]The collective bargaining agreement states in relevant part, "AGREEMENT entered into this, 20th day of July, 2000, between Valeo Electrical Systems, Inc.…and the International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO, and its Local 509, hereinafter referred to as the 'Union.'" (Agreement (Aug. 14, 2000), at 3 (attached as Ex. E to Fusco Aff.) Accordingly, the Court will use "Union" to refer to both the local and the international unions, except where it needs to address either separately.

[4]Though Alonci's amended complaint does not attribute this quotation, it appears to come from what the parties have referred to as the "highlight book," part of the Union's notice of a May 5, 2002, meeting. (Meeting Notification (attached to Fusco Aff. (Docket No. 7), Ex. B.), at 2.)

of employees, including Alonci, were repeatedly told that the likelihood of layoff was high and that the "incentive program was the best thing going."[5]

Alonci and many other employees confronted the Union and inquired as to whether there would be any further future incentives or any future bargaining by the Union. (Am. Compl. ¶ 19.) Alonci made this inquiry because there was some speculation that Valeo wanted more reductions than allowed for in the amended[6] agreement. Between January and March 2005, local Union officials Dave Roehrig and Mark Moochler acknowledged that the Union was negotiating for additional incentives, but that the only negotiations being undertaken were for employees who fell under the category known as "25 and out," and Alonci did not fall within this category of employees. (Am. Compl. ¶ 20.) Convinced by the Union that layoffs were imminent and that no further bargaining would occur in the future, Alonci decided to sign up for the voluntary attrition program. (Am. Compl. ¶ 21.)

Upon signing up for the voluntary attrition program, Alonci was presented by Valeo with an agreement and release, indicating that she was relieving both Valeo and the Union from any liability and that she would not be permitted to sue Valeo or the Union. The compensation Alonci was to receive for signing the agreement and release amounted to nothing more than that to which she would have otherwise been entitled

---

[5]This comment appears in the complaint in quote marks, but no specific attribution is made. (Am. Compl. ¶ 18.) The amended complaint alleges generally that "the representations were made by Dave Roehrig, Presidnet [sic] of the Local Union, Mark Moochler, Shop chairman of the Local Union and various other committee men of the local union." (*Id.*)

[6]The Court presumes that Plaintiff is referring to what she called the "concessionary agreement," described above.

pursuant to the amended agreement[7] even if said release wasn't signed. As such, there was no consideration underlying the contract between Valeo and Plaintiff. That is,

> [d]espite the fact that the contract[8] references the payments made under such agreement as payments to which the plaintiff would not be otherwise entitled, the fact of the matter is that the union contract entitled the plaintiff to the same benefits without the necessity of signing such a release.

(Am. Compl. ¶ 23.) However, the Union represented to Alonci and other employees that in order to receive the benefits of the attrition program in the concession agreement, the release would have to be signed. (Am. Compl. ¶ 24.) Alonci, after reading the agreement and release, became concerned as to the following statement:

> "If you choose to participate in this voluntary Program, you should understand that Valeo may adopt new or modified incentive or benefit provisions in the future that may be more or less advantageous to you than this Program. You should not expect or assume that any such future programs will be extended on a retroactive basis to anyone who participates in this voluntary Program."[9]

(Am. Compl. ¶ 25.) Alonci heard "rampant rumors around [Valeo], many of which were fostered by the [U]nion, regarding the fact that Valeo was looking to get rid of more and more workers and was threatening to close down if more concessions were not made by the Union." (Am. Compl. ¶ 26.)

Out of a concern that, if she could not keep her job, she wanted to leave Valeo under the best possible attrition plan, Alonci went to the Union and asked why that

---

[7]Once again, the Court presumes plaintiff is referring to what Alonci termed the concessionary agreement, described above.

[8]The Court presumes that she is referring to the agreement and release she was allegedly required to sign in order to volunteer for the attrition program described as part of the concessionary agreement, sometime referred to in the compliant as the "amended agreement."

[9]The complaint does not provide a specific citation to the language quoted.

clause was contained in the agreement and release, and asked whether some future improved attrition program was being considered, or was already being negotiated, or could be negotiated in the future. (Am. Compl. ¶ 27.) The Union represented to plaintiff, and other employees who inquired, that it would not enter into any further negotiations to enhance the attrition program and "overtly stated to plaintiff and other employees that the attrition program being offered was 'as good as it would get' and that if they didn't take it, they would likely be laid off involuntarily." (Am. Compl. ¶ 30.)

The Union made these representations[10] despite the fact that they were aware that Valeo was threatening closure at the conclusion of the contract. Union officials were well aware that Valeo was taking the position that it likely could not afford to remain open beyond the contract end date in September 2008, which had been modified to July 31, 2008. (Am. Compl. ¶¶ 10, 31.) Valeo formally announced on July 27, 2005, that it was closing the plant in Rochester, New York, although the decision to close the plant had been "made informally some months prior."[11] (Am. Compl. ¶ 34.)

Furthermore, the Union was aware further negotiations were underway informally, or were to commence imminently, for the purpose of "effects bargaining," which would determine the impact that such closure would have on the remaining employees. Moreover, as stated in the amended complaint: "[i]t appears that the Union did not

---

[10]These allegations are made "upon information and belief." The complaint is signed by Donna Marianetti, Esq. She does not list the source of her information, or the reason for her belief. However, Fed. R. Civ. P. 11 requires that the attorney's information and belief must have been "formed after reasonable inquiry."

[11]This allegation is also made upon information and belief, but the source of the information and the reason for its belief is not detailed.

request that Valeo enter negotiations in regard to the decision to close the plant to determine if any concessions could be made that would keep the plant open." (Am. Compl. ¶ 32 & n.1.)

Up to the point of the official announcement of closing, Valeo had been successful in shrinking its Rochester work force from approximately 3,000 employees to approximately 510 employees as a result of the re-negotiation of contracts with the Union. (Am. Compl. ¶ 46.) Subsequent to the July 27, 2005 announcement of the plant closing, the Union and Valeo (aided by a consultant hired by Valeo) continued negotiations which resulted in an additional amendment to the collective bargaining agreement. That amendment was ratified on or about September 25, 2005, and included "effects bargaining," which would have resulted in a far greater financial benefit to Alonci in the form of a larger lump sum payment and/or pension benefits that were not available under the attrition program which encompassed her separation from Valeo. It was upon the media publication of the ratification of the new contract that Alonci discovered the Union had acted, as she alleges, arbitrarily, in bad faith and had engaged in the misrepresentation of facts to her. (Am. Compl. ¶ 47.)

The effects bargaining negotiation benefitted many of the individuals who held official capacities with the Union. At least two individual employees, Sam Cupello and Sarin Khuy, with close Union and/or Valeo management ties, were permitted to remain at work by deferring their end date after "signing the same attrition program as that signed by plaintiff and many other employees." (Am. Compl. ¶ 37.) Ultimately, Cupello and Khuy, were permitted to withdraw their original election for the attrition program, and to receive the more favorable program, which was subsequently negotiated between the

Union and Valeo. Alonci and other employees believe that these two individuals were permitted to stay on at work thereafter because certain members of the Union and Valeo management knew that the more beneficial program was being negotiated.

On several occasions from January through March 31, 2005, Dave Roehrig and Mark Moochler represented to Alonci and the other consolidated plaintiffs that, based upon each individual's seniority, he or she would be impacted by an upcoming layoff in their respective work areas. (Am. Compl. ¶ 38.) Subsequent to her separation from Valeo, Alonci learned, as did the other consolidated plaintiffs, that individuals with less seniority remained employed by Valeo and were not impacted by layoffs. (Am. Compl. ¶ 38.) Alonci alleges that had she been adequately informed, or had she received proper and appropriate counsel and guidance from the Union, she would not have made the decision to separate her employment pursuant to the attrition program, which the Union. (Am. Compl. ¶ 43.)

As a result of the facts alleged above, Alonci raises two causes of action against the Union. The First, labeled "Breach of Duty," is:

> 53. The defendant breached its duty of fair representation of plaintiff by acting in bad faith upon plaintiff's inquiry(ies) to the defendant and by misrepresenting to each of these plaintiffs that they would be laid off if they did not opt to exit under the attrition program, and with respect to plaintiffs Beachner, Fanning and Lucas, by failing to properly inform them that there were available jobs for them to fill when each sought to return to work from medical leave.
>
> 54. The defendant failed to accurately advise the plaintiff of the scope of expected future (or ongoing negotiations).
>
> 55. The defendant failed to advise the plaintiff of options available to the Union if the rumors of plant closure became fact, such as but not limited to "effects bargaining".

> 56. The defendant's complained of conduct was not attributable to mere ineptitude or poor judgment, but rather was conduct undertaken to induce the plaintiff to act in the manner desired by the defendant.

(Am. Compl. ¶¶ 53-56.) The Second cause of action, labeled, "Fraudulent Misrepresentation," is:

> 62. Despite the fact that the Union was fully aware of its options and certain anticipated and/or ongoing negotiations which may have resulted in further benefit to the plaintiff had plaintiff remained in his/her employment, the Union intentionally failed to disclose those options to plaintiff and represented that the attrition program available at the time would be "as good as it would get." Further, the defendants misrepresented each plaintiffs [sic] standing for layoff and represented that each would be laid off based upon his/her seniority.
>
> 63. The defendant made said representations knowing full well that the [sic] it had as a viable avenue the ability to negotiate "effects bargaining" with the Company if the rampant rumors of plant closure proved to be true.
>
> 64. The representations of the defendant were false as the attrition program accepted by the plaintiff was not "as good as it would get" and the defendant did engage in effects bargaining with the company—an avenue not even revealed to the plaintiff by the defendant as a potential option in the event the rampant rumors of plant closure came to be fact.

## STANDARDS OF LAW

### *Rule 12(b)(6) Standard*

Recently, the U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955 (May 21, 2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

> action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id*. at 1964-65 (citations and internal quotations omitted). *See also*, *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, — F.3d —, 2007 WL 1989336 at *5 (2d Cir. Jun. 11, 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 2007 WL 1717803 (2d Cir. Jun. 14, 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.) When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n. 3 (2d Cir.1994)).

The Court, "[i]n considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6),…must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Further, the Court must view the complaint, and draw all reasonable inferences, in the light most

favorable to the non-moving party. *Id.*; *see also* 2 Moore's Federal Practice, § 12.34[1][b] (Matthew Bender 3d ed.) (court must accept plaintiff's factual allegations as true).

### *Fed. R. Civ. P. 9(b)*

Rule 9(b) requires that allegations of fraud must state the circumstances of the alleged fraud with particularity. "Specifically, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

### *Duty of Fair Representation*

Section 301 of the National Labor Relations Act, 29 U.S.C. § 185, permits employees to sue the labor organization that represents them. The Second Circuit, in *Sim v. New York Mailers' Union No. 6*, 166 F.3d 465 (2d Cir. 1999), described the plaintiff's burden of proof as follows:

> It is well-established that a union has a duty to represent fairly all union members in the negotiation of a collective bargaining agreement. *See Spellacy* [*v. Airline Pilots Association-International*], 156 F.3d [120] at 126 [(2d Cir. 1998)] (*citing* [*Air Line Pilots Ass'n v.*] *O'Neill*, 499 U.S. 65, 74, 111 S. Ct. 1127, 113 L. Ed. 2d 51). This duty "is implied under the scheme of the National Labor Relations Act." *White v. White Rose Food*, 128 F.3d 110, 113 (2d Cir. 1997) (*citing DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164, 76 L. Ed. 2d 476, 103 S. Ct. 2281 (1983)). "A union breaches its duty of fair representation if its actions 'can fairly be characterized as so far outside a wide range of reasonablenes…that [they are] wholly arbitrary, discriminatory, or in bad faith.'" *Spellacy*, 156 F.3d at 126 (alterations in original) (*quoting O'Neill*, 499 U.S. at 67). Bad faith requires a showing of fraudulent, deceitful, or dishonest action. *See Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 531 (10th Cir. 1992).

*Sim*, 166 F.3d at 472.

**ANALYSIS**

Defendants argue that, "the claim that defendants violated their duty of fair representation by telling plaintiffs the Union was not going to negotiate any further…" consists of mere "statements as to what may or may not occur in the future [and] do not state a cause of action of fraud." (Def.s' Mem. of Law (Docket No. 27) at 7.) They rely on the New York Supreme Court, Appellate Division, Second Department's holding in *Carvel Corp. v. Nicolini*, 144 A.D.2d 611 (N.Y. App. Div. 1988). In that case, the Second Department stated, "[r]epresentations which are mere expressions of opinion of present or future expectations are not to be considered promises when looking at fraud in the inducement (*see, Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211, 220; *Woodmere Academy v Steinberg*, 41 NY2d 746, 751). *Carvel*, 144 A.D.2d at 613. However, that argument overlooks the fact that Plaintiff can succeed if her proof convinces the trier of fact that the Union breached its duty of fair representation through, "arbitrary or bad-faith conduct on the part of the Union." *Vaca v. Sipes*, 386 U.S. 171] *supra*, at 193 [1967]." *Amalgamated Ass'n of St., Elec. Ry. and Motor Coach Emp. of America v. Lockridge*, 403 U.S. 274, 299 (1971). Under the U.S. Supreme Court's recently-promulgated standard, the Court concludes that Plaintiffs' claim rises "a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp.*, — U.S. —, 127 S.Ct. 1955.

Defendants also argue that:

> In addition, the plaintiffs' allegations fail as a matter of law because the statements about future negotiations could not have been made with the intent to deprive plaintiffs of a better benefit since none existed. The plaintiffs never alleged that the 2005 amendments already existed at the time plaintiffs accepted the 2002 program. As mentioned earlier, plaintiffs

are unclear about whether negotiations were underway at all let alone among whom. Because plaintiffs have not and cannot plead the intent to deprive them of a benefit or Defendant's desire to achieve some improper advantage they do not state a cause of action for fraud.

(Def.s' Mem. of Law (Docket No. 27) at 7-8.) This argument is not persuasive. The Court notes the amended complaint alleges that when the consolidated plaintiffs made inquiries in or about March 2005, they were told that the Union "would not enter into any further negotiations to enhance the attrition program and overtly stated to plaintiff and other employees that the attrition program being offered was 'as good as it would get' and that if they didn't take it, they would likely be laid off involuntarily." (Am. Compl. ¶ 30.) However, as also alleged in the amended complaint, at the same time Union officials made those representations, "the Union was aware that further negotiations were underway informally or were to commence imminently for the purpose of "effects bargaining" which would determine the effect that such closure would have on the remaining employees." (Am. Compl. ¶ 32.)

Defendants also cite to *First Nat'l State Bank v. Irving Trust Co.*, 91 A.D.2d 543 (N.Y. App. Div. 1982), in which the New York Appellate Division wrote,

> "[h]owever limited may be the duty to probe the truthfulness of a representation (*see* Prosser on Torts [2d ed.], pp. 552-553; Restatement, Torts, § 540), there can be no liability in fraud where the complaining party is, in advance, fully knowledgable and apprised of those matters as to which the representations are alleged to have deceived." (*200 East End Ave. Corp. v General Elec. Co.*, 5 AD2d 415, 418, *affd* 6 NY2d 731.)

*First Nat'l State Bank*, 91 A.D.2d at 544. Defendants rely on this case, and *200 East End Ave. Corp.* to argue that,

> Plaintiff's allegations of reliance are belied by their own allegations that they were specifically informed of the possibility of a better retirement incentive by Valeo. While the Union and Valeo negotiated any retirement incentive,

>it is Valeo who pays the retirement incentive. In paragraph 25 of the complaint, Plaintiffs acknowledge that Valeo specifically informed them "that the company may adopt new or modified incentive or benefit provisions in the future that may be less advantageous to you than this Program." (Amended Complaint ¶ 25).

(Pl.s' Mem. of Law (Docket No. 23) at 7.) As Plaintiff points out, however, it was the inclusion of the language mentioned in paragraph 25 that caused her to question the Union representatives with regard to future negotiations and to receive the answer that she alleges deceived her into signing up for the attrition plan. (Pl.'s Mem. of Law (Docket No. 25) at 17.) At this stage of the litigation, Plaintiff must merely show that her claim is plausible, and the Court determines she has met this standard. With regard to Defendants' argument that Plaintiff could have made inquiries with Valeo, that issue can be addressed in a summary judgment motion, if Defendants choose to do so.

Defendants also argue that Plaintiff's claims in paragraphs 31 and 32 of the amended complaint do not support a cause of action for misrepresentation by the Union as to whether effects bargaining would take place. Defendants rely on *Wynn v. AC Rochester*, 273 F. 3d 153, 156 (2nd Cir. 2001) to argue that "[i]n the instant case, Plaintiffs allege they relied upon misstatements by the Union, again without ever consulting the collective bargaining agreement or asking a company official." Defendants reference the collective bargaining agreement at page 167 on this issue. At that page is a letter from Valeo's branch director of human resources to the Union's president and shop chairman stating that, "[s]hould it...become necessary to close the...plant, the Corporation will meet with the Union and discuss the effects of the closure on the members of IUE Local 509." (Fusco Aff., Ex. E at 167.) Once again, this may become an issue for summary judgment, should the parties so choose, but in the context of a

motion to dismiss, the Court determines that Plaintiff has met her burden. For the purpose of the pending motion, Plaintiff has adequately plead justifiable reliance on the Union's representations after specific inquiry by her.

Defendants next argue that representations made in March 2005 about future negotiations are not actionable, stating that, "they were not misrepresentations about a material fact in existence but rather predictions about the future which are not actionable under fraud." (Def.s' Mem. of Law (Docket No. 23) at 10.) The Court disagrees. Plaintiff alleged that between January and March 2005, local Union officials Dave Roehrig and Mark Moochler acknowledged that the Union was negotiating for additional incentives, but that the only negotiations being undertaken were for employees who fell under the category known as "25 and out," and Alonci did not fall within this category of employees. (Am. Compl. ¶ 20.) Subsequently, however, she learned that,

> [a]t least two (2) individual employees with close Union and/or company management ties were permitted to remain at work by deferring their end date after signing the same attrition program as that signed by plaintiff and many other employees. Ultimately,…, those two (2) employees were permitted to withdraw their original election for the attrition program and to receive the more favorable program which was negotiated subsequently.

(Am. Compl. ¶ 37.) Plaintiff's allegations of fraud are specific and make her claim plausible.

Defendants also argue that Plaintiff has not sufficiently plead intent to defraud:

> Plaintiffs do not and cannot plead that the Defendant Union gained anything by Plaintiffs taking the 2002 incentive benefits. In fact, Plaintiffs got all of the benefits which they were entitled to under the 2002 amendment. The alleged fraudulent misstatements in no way were "intended to defeat the contract."

(Def.s' Mem. of Law (Docket No. 23) at 12.) They rely, among other cases, on *Manning v. Utilities Mutual Ins.*, Inc., 254 F. 3d 387 (2nd Cir. 2001), in which the Second Circuit wrote:

> Tort damages are available in New York where, *inter alia*, "an insurer engages in conduct outside the contract but intended to defeat the contract." *New York Univ.*, 639 N.Y.S.2d at 288, *accord Logan v. Empire Blue Cross & Blue Shield*, 275 A.D.2d 187, 714 N.Y.S.2d 119, 123 (2d Dep't 2000); *see also Bridgestone/Firestone Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (under New York law, a fraud claim associated with a breach of contract can be sustained and tort damages can be recovered where plaintiff can "demonstrate a fraudulent misrepresentation collateral or extraneous to the contract").

*Manning*, 254 F.3d at 400. Unlike the situation in *Manning*, though, Plaintiff here alleges that Defendants engaged in fraudulent conduct intended to induce her into entering into a new contract. In this regard, Plaintiff sufficiently maintains that the Union acted with the intent to defraud her and fellow employees to benefit employees who had close ties to Union leadership.

Finally, Defendants argue that Plaintiff has failed to plead fraud against the International union with specificity. They argue that the only allegation is that the International union's representative was silent, appearing to agree with the allegedly false representations being made by the Local union officials to Plaintiff, and those allegations are insufficient under Rule 9. (Am. Compl. ¶ 40.) The Court notes that, "plaintiffs have the 'burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter.'" *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) (quoting *Connecticut National Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987)). The only specificity required by Rule 9(b) concerns "the circumstances constituting fraud…" which "shall be stated with particularity." Fed. R. Civ.

P. 9(b) (2006). Plaintiff has done that. She alleged generally that the Union was motivated to reduce the number of hourly employees to better enable those remaining to reap bigger rewards. She then alleged the specific misrepresentations she attributes to Local union officials and alleged that the International union representative stood by while the Local union officials made allegedly false statements to Plaintiff. Taken together, Plaintiff's allegations are sufficient to meet the requirements of Rule 9(b).

## CONCLUSION

For the foregoing reasons, Defendant's motion (Docket No. 22) to dismiss is denied.

IT IS SO ORDERED.

Dated: December 7, 2007
      Rochester, New York      ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge